**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

vs.

HOWARD WAYNE McGEHEE,

    Defendant - Appellant.

No. 04-7095
(D.C. No. 04-CR-10-W)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BRISCOE**, and **McCONNELL**, Circuit Judges.

Defendant-Appellant Howard Wayne McGehee appeals from his multiple convictions and sentences arising out of his involvement in a methamphetamine manufacturing and distributing operation based at his residence in Wagoner County, Oklahoma. Our jurisdiction arises under 28 U.S.C. § 1291 and 28 U.S.C. § 3742(a), and we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## Background

An informant, Daniel R. Cox, first alerted law enforcement officials that Mr. McGehee was manufacturing methamphetamine at his residence in Wagoner County, Oklahoma. Mr. Cox revealed that he had previously purchased several items involved in the manufacture of methamphetamine and delivered them to Mr. McGehee. In addition, he told the officers that Mr. McGehee was in possession of a .32 caliber Colt semi-automatic pistol. Based on this information, a search warrant was sought and issued for Mr. McGehee's residence. During the evening of December 4, 2003, the warrant was executed.

At the time of the search, four persons were present at the residence: Mr. McGehee, Jason Don Sloan, Mary Jo Weaver/Maxwell, and Tamara Bianelle Bedwell. Inside the residence and outbuildings on the property, law enforcement discovered methamphetamine and items consistent with its manufacture, use, possession and distribution—including production equipment, precursor chemicals, empty blister packs, syringes, a firearm, a police scanner, surveillance equipment, a notebook containing drug notations, and other ingredients commonly used to manufacture methamphetamine.

At trial, Oklahoma Bureau of Narcotics Agent Earl Beaver and Drug Task Force Agent Clint Johnson testified that the evidence recovered during the search indicated that methamphetamine was being manufactured at the residence. The evidence suggested that both agents have extensive training and field experience

in the investigation of clandestine methamphetamine labs.

Mr. Cox and Mr. McGehee lived together for approximately three months in the summer prior to the search of Mr. McGehee's residence. In late November 2003, Mr. Cox was arrested for offenses unrelated to this appeal and detained in the Muldrow, Oklahoma city jail. It was during this detention that he first contacted law enforcement regarding the illicit activities taking place at Mr. McGehee's residence. Mr. Cox was released from custody on November 25, but was subsequently arrested on November 29 for other offenses. On December 4, Mr. Cox again met with law enforcement regarding Mr. McGehee. Following the search of Mr. McGehee's residence, Mr. Cox was released from custody on December 5. Shortly thereafter, Mr. Cox ventured to Mr. McGehee's residence to retrieve certain items that belonged to him and to purloin others, including a .32 caliber Colt semi-automatic pistol that he claims was wedged in a living room chair. Within a couple weeks, Mr. Cox turned the pistol over to law enforcement.[1]

A jury convicted Mr. McGehee on all seven counts brought against him: Count 1, conspiracy to manufacture, possess, and distribute methamphetamine in violation of 21 U.S.C. § 846; Count 2, attempt to manufacture 50 grams or more

_____

[1] Apparently Mr. Cox used the pistol before tendering it to law enforcement, discharging it several times during an incident in Arkansas. This act resulted in him being arrested and charged for "terroristic threats." Charges were later dropped.

of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846 and 18 U.S.C. § 2; Count 3, possession of listed chemicals knowing or having reasonable cause to believe the listed chemicals would be used to manufacture methamphetamine in violation of 21 U.S.C. §§ 802 and 841(c)(2) and 18 U.S.C. § 2; Count 4, maintaining a place for the purpose of manufacturing, distributing, and using methamphetamine in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; Count 5, possession of a mixture or substance containing a detectable amount of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count 6, possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); and Count 7, carrying a firearm during a drug trafficking felony and possessing a firearm in furtherance of a drug trafficking felony in violation of 18 U.S.C. § 924(c)(1)(A)(i).

In accordance with 21 U.S.C. § 851(a)(1),[2] the government filed an information seeking to statutorily enhance Mr. McGehee's sentence based on his prior conviction for a felony drug offense pursuant to §§ 841(b)(1)(A) and (C). The district court found one of his prior convictions qualified for the purposes of

_____

[2] 21 U.S.C. § 851(a)(1) states, in pertinent part, that "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon."

- 4 -

§§ 841(b)(1)(A) and (C) and that §§ 841(b)(1)(A) and (C) applied.  As a result, the statutory minimum sentence Mr. McGehee could receive for Counts 1 and 2 was 240 months imprisonment followed by a term of supervised release of at least 10 years.  See § 841(b)(1)(A).  As to Counts 3, 4, and 5, each was punishable by a term of imprisonment of up to 360 months followed by a mandatory term of supervised release of at least 6 years.  See 21 U.S.C. § 841(b)(1)(C).  Count 6 was punishable by a term of imprisonment of up to 120 months.  See 18 U.S.C. § 924(a)(2).  Count 7 carried a mandatory consecutive term of imprisonment of not less than 60 months.  See id. § 924(c)(1)(A)(i) (term of imprisonment shall be consecutive to other terms of imprisonment imposed).

During sentencing, the district court examined and adopted the findings in the pre-sentencing report (PSR).  Accordingly, the district court found that Mr. McGehee was responsible for 3816.4824 kilograms of marihuana equivalent, setting his base offense level at 34.  See U.S.S.G. § 2D1.1(c)(3) (Nov. 2003).  Based on a total offense level of 34, with a criminal history category of III, Mr. McGehee's guideline range was 188 to 235 months.

The district court sentenced Mr. McGehee to terms of imprisonment of 240 months on Counts 1 and 2; 235 months on Counts 3, 4, and 5; 120 months on Count 6; and 60 months on Count 7.  Counts 1 through 6 are to be served concurrently, while Count 7 is to be served consecutively.  Mr. McGehee was further sentenced to supervised release for terms of ten years on Counts 1 and 2;

three years on Counts 3, 4, and 6; six years on Count 5, and five years on Count 7, all to run concurrently. This appeal followed.

## Discussion

On appeal, Mr. McGehee challenges the sufficiency of the evidence supporting his conviction on all counts and the district court's application of 21 U.S.C. 841(b)(1)(A) and drug quantity determination when calculating his sentence.

I. *Sufficiency of the Evidence*

In determining whether the government presented sufficient evidence to support the jury's verdict, we must review the record de novo and ask only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. United States v. Scull, 321 F.3d 1270, 1282 (10th Cir. 2003). We do not weigh conflicting evidence or decide the credibility of witnesses, as that duty is delegated exclusively to the jury. United States v. Hien Van Tieu, 279 F.3d 917, 921 (10th Cir. 2002). "Rather than examining the evidence in 'bits and pieces,' we evaluate the sufficiency of the evidence by 'consider[ing] the collective inferences to be drawn from the evidence as a whole.'" United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997) (alteration in original). We may

overturn a guilty verdict on sufficiency grounds only if no reasonable juror could have reached such a verdict on the evidence presented.  United States v. Shepard, 396 F.3d 1116, 1119 (10th Cir. 2005).

A.  *Conspiracy to Manufacture, Possess, and Distribute Methamphetamine*

Mr. McGehee claims that the government failed to provide sufficient evidence that he was part of a conspiracy to manufacture, possess, and distribute methamphetamine.  A conspiracy in violation of 21 U.S.C. § 846 consists of four elements.  See United States v. Montelongo, 420 F.3d 1169, 1173 (2005).  The government must prove beyond a reasonable doubt (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators.  Id.   On appeal, Mr. McGehee challenges only the first of these elements, arguing that "*no one* testified as to any agreement that [he] had with anyone to manufacture, possess and distribute methamphetamine." Aplt. Br. at 15 (emphasis in original).

In determining whether there was an agreement to commit an unlawful act, "the critical inquiry is whether the circumstances, acts, and conduct of the parties [we]re of such a character that the minds of reasonable men may conclude therefrom that an unlawful agreement exist[ed]."  United States v. Morehead, 959 F.2d 1489, 1500 (10th Cir. 1992) (internal quotation marks omitted).  The

existence of an agreement to violate the law "may be inferred from the facts and circumstances of the case." United States v. Evans, 970 F.2d 663, 669 (10th Cir. 1992).

Although it is true that no witness at Mr. McGehee's trial testified to the existence of an express agreement between Mr. McGehee and Mr. Sloan to manufacture, possess and distribute methamphetamine, the government's evidence was more than sufficient to allow the jury to reasonably infer that such an agreement existed. Mr. Sloan was physically present in Mr. McGehee's house at the time the search warrant for the house was executed on December 4, 2003, and both Mr. McGehee and Mr. Sloan were arrested at that time. Agent Johnson testified that it appeared that Mr. Sloan had been staying in the south bedroom of Mr. McGehee's house. Agent Beaver testified that, when he handcuffed Mr. Sloan, he noticed the palms of Mr. Sloan's hands were stained a deep brown, consistent with iodine staining. Mr. Beaver opined that, based upon his experience, the stains were two days old or less. Agent Beaver also testified that he found tubing and glassware at Mr. McGehee's residence that exhibited similar iodine stains, suggesting that Mr. Sloan had been engaged in the production of methamphetamine. Finally, Mr. Cox testified that Mr. Sloan had a reputation for being the best in the area at producing methamphetamine from anhydrous ammonia. According to Mr. Cox, Mr. McGehee typically produced methamphetamine using red phosphorus and iodine, but wanted to learn how to

use the anhydrous ammonia method because it was an easier method. Mr. Cox further testified that Mr. McGehee asked him on several occasions to find and make contact with Mr. Sloan. Considering this evidence along with the items of physical evidence found in Mr. McGehee's house at the time of the search, to which Agents Johnson and Beaver testified were indicative of methamphetamine manufacturing, the jury reasonably could have inferred that Mr. Sloan was staying at Mr. McGehee's house and assisting him in the production of methamphetamine with the purpose of possessing and distributing it.

B. *Attempt to Manufacture Methamphetamine*

Mr. McGehee argues that the government failed to provide sufficient evidence that he attempted to manufacture methamphetamine. To obtain a conviction for attempt to manufacture methamphetamine under 21 U.S.C. § 846, the government is required to prove beyond a reasonable doubt the defendant's "(1) intent to manufacture methamphetamine, and (2) commission of an act which constitutes a substantial step towards commission of the substantive offense." United States v. Becker, 230 F.3d 1224, 1234 (10th Cir. 2000). Intent to manufacture methamphetamine may be inferred from the surrounding circumstances. See United States v. Leopard, 936 F.2d 1138, 1141 (10th Cir. 1991) (finding the defendant's attempt to purchase most of the necessary ingredients was enough to allow a jury to infer beyond a reasonable doubt that he intended to manufacture methamphetamine). And the substantial step

requirement may be inferred where many of the materials necessary for manufacturing methamphetamine were present. See Becker, 230 F.3d at 1234; Leopard, 936 F.2d at 1141.

At trial, Agents Johnson and Beaver testified that the search of Mr. McGehee's residence and the outbuildings on his property uncovered a cache of items needed for the manufacture of methamphetamine—including precursor chemicals, production equipment, and other commonly used ingredients. In addition, Agent Johnson testified that the smell permeating one of the outbuildings and the extensive metal corrosion therein indicated extensive methamphetamine manufacturing had taken place there. The agents' accounts were corroborated by Mr. Cox's testimony that Mr. McGehee continuously cooked methamphetamine during the three month period they lived together. This evidence was certainly more than sufficient for a jury to reasonably conclude that Mr. McGehee intended to manufacture methamphetamine and took a substantial step towards doing so.

C. *Possession of Listed Chemicals*

Mr. McGehee argues next that the government failed to provide sufficient evidence that he possessed listed chemicals having reasonable cause to believe they would be used to manufacture methamphetamine. To convict under 21 U.S.C. § 841(c)(2), the government is required to prove beyond a reasonable doubt the defendant (1) knowingly or intentionally possessed a listed chemical (2)

knowing, or having reasonable cause to believe, that the listed chemical would be used to manufacture a controlled substance. See United States v. Nguyen, 413 F.3d 1170, 1175-76 (10th Cir. 2005). While not disputing that listed chemicals were found at his residence, Mr. McGehee contends Mr. Cox's own testimony establishes that Mr. Cox brought them there and that he was therefore the one who knowingly possessed them. In turn, he maintains that there is no evidence that he knew or had reasonable cause to believe the listed chemicals would be used to manufacture methamphetamine.

Because the listed chemicals were not in Mr. McGehee's actual possession, we analyze whether he had constructive possession over them. See United States v. Scull, 321 F.3d 1270, 1284 (10th Cir. 2003). In order for an individual to constructively possess property, he must knowingly have the power to exercise dominion or control over it. United States v. Lopez, 372 F.3d 1207, 1212 (10th Cir. 2004). In some instances, "[e]xercising dominion and control over a residence where contraband is concealed may constitute constructive possession of the narcotics." United States v. Parrish, 925 F.2d 1293, 1296 (10th Cir. 1991), abrogated on other grounds by United States v. Wacker, 72 F.3d 1453 (10th Cir. 1996). "In cases involving joint occupancy of a place where contraband is found, mere control or dominion over the place in which the contraband is found is not enough to establish constructive possession." United States v. McKissick, 204 F.3d 1282, 1291 (10th Cir. 2000). Rather, the government is required to present

"'direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband.'" Id. (quoting United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998)). That is, the government must present "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the . . . contraband." Id. (quotation marks omitted). The government has satisfied these standards.

While there is some dispute as to whether Mr. McGehee jointly occupied his residence with others, we need not make that specific determination because sufficient evidence establishes the requisite nexus between Mr. McGehee and the listed chemicals. The record shows that the listed chemicals were found in plain view throughout Mr. McGehee's residence and the outbuildings on his property. A reasonable jury could certainly conclude that Mr. McGehee had knowledge of these chemical and access to them. But perhaps more significant to our determination is a portion of Mr. Cox's testimony not stressed by Mr. McGehee. Though Mr. Cox did indeed testify that he brought the listed chemicals at issue to Mr. McGehee's residence, he prefaced that testimony by explaining that he did so on Mr. McGehee's behalf. See II Tr. at 486-87. That is, Mr. Cox testified that he was acting as Mr. McGehee's agent and that the chemicals belonged to Mr. McGehee. See id. Taken together, this evidence was sufficient to link Mr. McGehee to the listed chemicals. We also reject Mr. McGehee's position that there is no evidence he knew or had reasonable cause to believe the listed

chemicals would be used to manufacture methamphetamine. The evidence discussed supporting the conspiracy and attempt counts certainly provide a sufficient evidentiary basis to support the jury's reasonable finding to the contrary.

D. *Maintaining a Place for the Purposes of Manufacturing, Distributing, and Using Methamphetamine and Dilaudid (Hydromorphone)*

Mr. McGehee claims that the government failed to provide sufficient evidence that he maintained a place for the purpose of manufacturing, distributing, and using methamphetamine and dilaudid. He draws our attention to the language of Count 4 of the indictment, which charged him with "maintain[ing] a place for the purpose of manufacturing, distributing, and using controlled substances, to include but not limited to methamphetamine and dilaudid (hydromorphone)." R. Doc. 27 at 4. He appears to contend that the express language of Count 4 required the government to prove that he maintained a place for the purpose of "manufacturing, distributing, *and* using both methamphetamine *and* [d]ilaudid." Aplt. Br. at 21.

Though Count 4 of the indictment used the conjunction *"and,"* the jury was properly instructed that in order to convict Mr. McGehee under 21 U.S.C. § 856(a)(1), the government was required to prove beyond a reasonable doubt that he knowingly maintained a place for the purpose of manufacturing, distributing, *or* using controlled substances. See R. Doc. 51 at 35; 21 U.S.C. § 856(a)(1);

- 13 -

Scull, 321 F.3d at 1284. "It is hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." United States v. Gunter, 546 F.2d 861, 868-69 (10th Cir. 1976); United States v. Pauldino, 443 F.2d 1108 (10th Cir. 1971). "[I]t is generally accepted procedure to use 'and' in an indictment where a statute uses the word 'or' because this assures that defendants are not convicted on information not considered by the grand jury." United States v. Earls, 42 F.3d 1321, 1327 (10th Cir. 1994). "Moreover, it is 'entirely proper' for the district court to instruct the jury in the disjunctive, though the indictment is worded in the conjunctive." Id. As such, the next inquiry is whether the government provided sufficient evidence to support a jury's reasonable inference that Mr. McGehee engaged in any of the statutorily proscribed conduct—manufacturing, distributing, or using—as to either controlled substance—methamphetamine or dilaudid—identified in the indictment and jury instruction.

As discussed, Mr. Cox testified that Mr. McGehee continuously cooked methamphetamine during the three months they lived together. And the testimony of Agents Johnson and Beaver relating to the evidence obtained from Mr. McGehee's residence and the outbuildings on his property indicated that methamphetamine continued to be manufactured there. In fact, numerous seized items tested positive for methamphetamine and precursor chemicals. Taking the evidence with all the reasonable inferences to be drawn therefrom most favorably

to the government, the evidence was sufficient to warrant Mr. McGehee's conviction for maintaining a place for the purpose of manufacturing methamphetamine.

E. *Possession of Methamphetamine With Intent to Distribute*

Mr. McGehee claims that the government failed to provide sufficient evidence that he possessed methamphetamine with an intent to distribute. He maintains that the lab results prepared and testified to by Oklahoma State Bureau of Investigation Criminalist Michael Childers did not establish a specific quantity of methamphetamine or substance containing a detectable amount of methamphetamine. He further maintains that any methamphetamine that may have been present at his residence was of insufficient weight to suggest an intent to distribute.

Mr. McGehee's argument does not fare well when considering what the government must prove under 21 U.S.C. § 841(a)(1) and what the record evidence shows. To establish a violation of § 841(a)(1), the government must prove beyond a reasonable doubt that "the defendant knowingly possessed a controlled substance with the intent to distribute." United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir. 1986) (citations omitted). Here, Count 5 of the indictment charged Mr. McGehee with knowingly and intentionally possessing a mixture or substance containing a detectable amount of methamphetamine with the intent to distribute. See R. Doc. 27 at 5. He was not charged with, and the government

- 15 -

was not required to prove, possession of a *specific* quantity of either methamphetamine or a substance containing a detectable amount of methamphetamine.

The determination of a substance's quantity is not, of course, irrelevant in cases such as this because a defendant's "intent to distribute" may be inferred from possession of a large quantity of a substance. United States v. Powell, 982 F.2d 1422, 1430 (10th Cir. 1992). The rationale for the inference is that the defendant possessed more of the substance than usual for personal use. Id. In this regard, our review of the record reveals that—contrary to Mr. McGehee's contention—Mr. Childers testified at trial that Mr. McGehee possessed approximately 49 kilograms of a mixture or substance containing a detectable amount of methamphetamine. See III Tr. at 633. A jury could reasonably conclude that such a quantity was more than usual for personal use and infer an intent to distribute. The additional evidence discussed above lends even further support to that inference. We therefore hold that a reasonable jury could conclude that Mr. McGehee possessed a controlled substance with the intent to distribute.

F. *Possession of a Firearm by a Convicted Felon*

Mr. McGehee claims that the government failed to provide sufficient evidence that he possessed a firearm after felony conviction. To obtain a conviction under 18 U.S.C. § 922(g)(1), the government has to prove beyond a

reasonable doubt that (1) the defendant was convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce. United States v. Wilson, 107 F.3d 774, 779 (10th Cir. 1997). Mr. McGehee focuses his challenge on the second element only.

Proof of actual possession is not required to support a conviction under § 922(g)(1); constructive possession is sufficient. See id. As noted, "[i]n cases involving joint occupancy of a place where contraband is found . . . the government is required to present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." McKissick, 204 F.3d 1291 (citations and quotations omitted). That is, the government must present "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the . . . contraband." Id. (quotation omitted).

Mr. McGehee claims evidence is lacking that he knew there was a firearm in his residence at any time, much less on the date identified in the indictment—on or about December 4, 2003. We disagree. The firearm underlying Mr. McGehee's § 922(g)(1) conviction is the .32 caliber Colt semi-automatic pistol recovered from his home and subsequently tendered to law enforcement by Mr. Cox. At trial, Mr. Cox testified that Mr. McGehee was the owner of this firearm and that he observed Mr. McGehee carrying it during their many methamphetamine deliveries. Mr. McGehee contends that Mr. Cox's

testimony is insufficient to establish his possession, lodging what appears to be an attack on Mr. Cox's credibility. See Aplt. Br. at 23. We recognize, of course, that Mr. Cox's past misdeeds and self-interest bear on his credibility, but that determination was for the jury. See Hien Van Tieu, 279 F.3d at 921. Given our standard of review, Mr. Cox's testimony was sufficient to establish that Mr. McGehee had actual possession of the firearm during the summer Mr. Cox lived with him. In addition, the specific "on or about" date identified in the indictment is supported by the evidence. Though the December 4 search of Mr. McGehee's residence failed to uncover the firearm at issue, based on Mr. Cox's testimony that he retrieved the firearm from the location Mr. McGehee typically stored it—inside a living room chair—the jury could reasonably infer that Mr. McGehee constructively possessed it on or about that date.

G. *Carrying a Firearm During and in Relation to a Drug Trafficking Felony and Possession of a Firearm in Furtherance of a Drug Trafficking Felony*

Last, Mr. McGehee claims that the government failed to provide sufficient evidence that he carried a firearm during and in relation to a drug trafficking felony or possessed a firearm in furtherance of a drug trafficking felony. Common to either means of conviction under 18 U.S.C. § 924(c)(1)(A) is the possession of a firearm. See id. § 924(c)(1)(A) ("any person who, in furtherance of any [crime of violence or drug trafficking crime ], possesses a firearm . . ."); United States v. Durham, 139 F.3d 1325, 1335 (10th Cir. 1998) ("The 'carry'

- 18 -

prong of § 924(c)(1)(A) has two elements: 'possession of the weapon through the exercise of dominion or control; and transportation of the weapon.'"). Mr. McGehee again focuses his challenge on this element only and attacks the credibility of Mr. Cox's testimony relating thereto. As before, we reject Mr. McGehee's challenge to Mr. Cox's testimony based on credibility. See Hien Van Tieu, 279 F.3d at 921. As such, Mr. Cox's testimony that Mr. McGehee carried the firearm at issue during their many drug deliveries provided a sufficient basis for a reasonable jury to conclude that he violated 18 U.S.C. § 924(c)(1)(A).

II. *Sentencing Issues*

A. *Prior Felony Drug Conviction*

Mr. McGehee challenges the district court's application of the 240-month mandatory minimum sentence established by 21 U.S.C. § 841(b)(1)(A) to Counts 1 and 2. He maintains that his conviction in Texas for Failure to Pay Marihuana Tax—the prior conviction used by the district court to determine § 841(b)(1)(A)'s applicability—constitutes a conviction for a revenue offense rather than a felony drug offense. Reviewing the legality of his sentence de novo, United States v. Price, 75 F.3d 1440, 1446 (10th Cir. 1996), we disagree.

Under § 841(b)(1)(A), the government is required to show that the defendant was convicted of a "felony drug offense." Section 802(44) defines the term "felony drug offense" to include "an offense that is punishable by imprisonment for more than one year under any law . . . of a State . . . that . . .

- 19 -

*restricts conduct relating to . . . marihuana . . . .*" (emphasis added). Although the statute does not define what constitutes a "restriction," reference to Webster's dictionary provides adequate elucidation of its ordinary meaning. See, e.g., Arthur Andersen LLP v. United States, 125 S. Ct. 2129, 2135-36 (2005) (referencing Webtster's to define the words "knowingly" and "corruptly" as used in 18 U.S.C. § 1512(b)); United States v. Bazile, 209 F.3d 1205, 1207 (10th Cir. 2000) (calling on Webster's to discern the meaning of the word "required" as used in U.S.S.G. § 2K2.4(a)). In Webster's, a "restriction" is defined as "a regulation that restricts or restrains," or "a limitation on the use or enjoyment of property or a facility." Webster's New Collegiate Dictionary 1006 (9th ed. 1991).

The language of § 841(b)(1)(A) clearly covers Mr. McGehee's prior conviction in Texas. Early on, the Supreme Court, in M'Culloch v. Maryland, 17 U.S. 316, 431 (1819), observed that a power to tax carries with it a power to destroy. This principle—though made in reference to the Federal government's supremacy over the states—rings true here. Mr. McGehee was convicted in 1992 of violating Texas Tax Code Ann. § 159.201 (1989), which provides: "A dealer commits [a third degree felony] if the dealer possesses [marihuana] on which the tax imposed by this chapter has not been paid." The Texas Tax Code defines "dealer" as "a person who *in violation of the law of [Texas]* imports into [Texas] or manufactures, produces, acquires, or possesses in [Texas] . . . more than four ounces of a taxable substance consisting of or containing marihuana." Id.

§ 159.001 (emphasis added).  But notably, the Texas Tax Code excepts from taxation, "[t]he possession, purchase, acquisition, importation, manufacture, or production of [marihuana] . . . if the activity is *authorized by law*."  Id. § 159.103 (emphasis added).  Thus, while ostensibly a revenue measure, § 159.201 discourages the widespread (unlawful) use of marihuana by imposing a tax on persons who—in violation of Texas law—possess, purchase, acquire, import, manufacture, or produce it.  That is, § 159.201 certainly restricts (i.e., regulates or limits) conduct relating to marihuana because in order to be in compliance with Texas law, the marihuana related activity (in whatever form, e.g., possession, acquisition, importation) must be lawful or a tax will be levied, non-payment of which will result in a third-degree felony.  No matter how slight, this is a restriction on conduct relating to marihuana.

Mr. McGehee also argues that Failure to Pay Marihuana Tax cannot be a "felony drug offense" because a person in Texas can be convicted of a tax code violation with regards to marihuana, as well as a possession of marihuana violation, without invoking double jeopardy concerns.  We see no merit in this argument.  A state, as well as the federal government for that matter, may employ a myriad of statutory devices to restrict conduct relating to marihuana.  To that end, a state may decide to enact a law that imposes severe criminal liability on persons unlawfully possessing marihuana.  Or, it may pass a law that requires such persons to pay a tax on the marihuana so possessed and make its non-

payment a third-degree felony. But a state's decision to do one or the other, or both, in no way alters the conclusion that such laws restrict conduct related to marihuana, 21 U.S.C. § 802(44), and that a felony conviction resulting from violative conduct is a felony drug conviction for the purposes of § 841(b).

Other circuits have reached similar conclusions when addressing marihuana tax cases. See, e.g., United States v. Trevino-Rodriquez, 994 F.2d 533, 536 (8th Cir. 1993) (holding that a conviction for the offense of possessing more than twenty-eight grams of marihuana without affixing thereto the appropriate indicia of tax payment, a violation of Kansas Statutes Ann. § 79-5208 (1989), constituted a prior felony drug offense within the meaning of 21 U.S.C. § 841(b)(1)(A)); United States v. Truelove, 527 F.2d 980, 983 (4th Cir. 1975) (holding that a conviction for the offense of transporting untaxed marihuana, a violation of the Marihuana Tax Act of 1937, was a prior conviction for purposes of sentencing under an earlier, and less comprehensive, version of § 841(b)(1)(A)). Mr. McGehee presents no persuasive authority to the contrary. Thus, we conclude that his Texas felony conviction was a prior felony drug offense within the meaning of 21 U.S.C. § 841(b)(1)(A) and that the district court did not therefore err in applying the 240-month mandatory minimum to Counts 1 and 2.

B. *Drug Quantities*

Mr. McGehee's final contention is that the district court's drug quantity calculation giving rise to his guideline offense level of 34 was impermissibly

speculative and grossly overestimated. "'We review the district court's calculation of drug quantities for the purpose of sentencing for clear error. We will reverse only if the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made.'" United States v. Ryan, 236 F.3d 1268, 1273 (10th Cir. 2001). The government has the burden of proving the quantity of drugs for sentencing purposes by a preponderance of the evidence. Id. "When the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate to establish the defendant's guideline offense level so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." United States v. Dalton, 409 F.3d 1247, 1251 (10th Cir. 2005) (internal quotations omitted). "However, the 'need to estimate drug quantities at times is not a license to calculate drug quantities by guesswork.'" Id. "When choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." United States v. Richards, 27 F.3d 465, 469 (10th Cir. 1994) (internal quotations and alterations omitted). Finally, we defer to the district court when reviewing the credibility of witnesses on whose testimony the district court relies in making its drug quantity factual findings. United States v. Nieto, 60 F.3d 1464, 1469-70 (10th Cir. 1995)

The PSR relied upon and adopted by the district court in setting Mr.

McGehee's guideline offense level estimated that he was responsible for a total of 3816.4824 kilograms of marihuana equivalent.[3] This drug total was calculated based on the sum of the following:

- 2736.48 kilograms of marihuana equivalent: According to the trial testimony of Mr. Cox, he lived with Mr. McGehee for a three month period in 2003 during which he was aware that Mr. McGehee was manufacturing between four to eight ounces of methamphetamine a week. "Using the most conservative, four (4) ounce estimate, manufacturing during a three month (twelve week) period would result in a total of forty-eight (48) ounces or (1360.8 grams) of methamphetamine manufactured." In addition to the 7.44 grams of methamphetamine that was recovered during the execution of the search warrant, Mr. McGehee was responsible for 1368.24 grams of methamphetamine or 2736.48 kilograms of marihuana.

- 1080 kilograms of marihuana equivalent: Law enforcement recovered 1620 tablets (81 boxes) containing at total of 97.2 grams of pseudoephedrine during the execution of the search warrant. According to Agent Beaver, law enforcement also recovered approximately 30 empty blister packs, with each pack previously containing 6 tablets of 60 milligrams pseudoephedrine each, for a total of 10.8 grams of pseudoephedrine. As such, Mr. McGehee was responsible for 108 grams of pseudoephedrine or 1080 kilograms of marihuana.

- .0024 kilograms of marihuana equivalent: Law enforcement recovered 2.4 grams or .0024 kilograms of marihuana during the execution of the search warrant.

See III R. (PSR at 7-8).

Mr. McGehee argues that the testimony of Mr. Cox—relating to Mr.

---

[3] According to the Sentencing Guidelines, where there are multiple drug types, the quantities of drugs are to be added by using the appropriate conversion ratios described in the drug equivalency tables. See U.S.S.G. § 2D1.1, app. n.6. The differing types of drugs are converted to an equivalent amount of marihuana to obtain one total drug quantity.

McGehee's manufacture of 1360.8 grams of methamphetamine or 2721.60 kilograms of marihuana equivalent—was not credible, but was instead inherently unreliable. He draws our attention to Mr. Cox's cooperation with the government, suggesting the possibility that Mr. Cox falsified his testimony as a means to "get himself out of trouble." Aplt. Br. at 29. In turn, he maintains that the district court failed to properly err on the side of caution by not excluding the drug quantity testified to by Mr. Cox. Accordingly, he appears to contend, as he did before the district court, that the drug quantity attributable to him should total the equivalent of 1094.8824 kilograms of marihuana, corresponding to a base offense level of 32 and a guideline range of 151 to 188 months. See Aplt. Br. at 29; II R. (Tr. of Sentencing Hr'g Aug. 25, 2004 at 11).

After reviewing the record, we are satisfied that the district court's drug quantity determination was not clearly erroneous. As noted, we acknowledge that Mr. Cox does not have a sterling past and did indeed cooperate with the government in Mr. McGehee's prosecution. But it is clear the district court was fully aware of this when it credited his testimony regarding the quantity of methamphetamine Mr. McGehee manufactured during the three month period they lived together. In fact, the district court explicitly addressed the credibility of Mr. Cox's testimony at the sentencing hearing, noting that:

> In this case, Mr. Cox's testimony was corroborated by other witnesses, as well as by physical evidence recovered during the execution of the search warrant, including precursor chemicals,

manufacturing equipment, and drug notations. During the course of this trial, this Court heard the testimony by Mr. Cox, as well as the additional evidence offered in this case. I find by a preponderance of the evidence that the amount of drugs used in the [PSR] for sentencing guideline calculations is credible and reliable. I further find that the probation officer relied on those conservative estimates and testimony in favor of the defendant, when determining the amount of drugs involved.

II R. (Tr. Sentencing Hr'g Aug. 25, 2004 at 12-13). Deferring to the district court's credibility assessment of Mr. Cox's testimony, Nieto, 60 F.3d at 1469-70, we hold that the drug quantity determination was supported by the facts and bears the requisite indicia of reliability.

In closing, we note that this case highlights the need for counsel's compliance with the Federal Rules of Appellate Procedure and the conscientious and careful review of written legal materials prior to court submission. Though we addressed the two sentencing issues raised by Mr. McGehee in the body of his brief, we note that both were absent from the required "statement of the issues presented for review." See Fed. R. App. P. 28(a)(5). Further, while we thoroughly reviewed the record to ascertain the timing of material events, counsel's errors with respect to certain date recitations somewhat confused this effort.

While Mr. McGehee's brief contained these minor problems, to our consternation, the government's fared much worse. Most troubling is the government's response to the evidentiary issues raised by Mr. McGehee. Counter

to the demands of Fed. R. App. P. 28(b), the government rambles through six such issues without a single citation to legal authority and without meeting each challenge directly.  Though there is obviously overlapping evidence in this case, the charges are distinct and each requires analysis and citation to authority.  The conclusory statement that "[t]he evidence was sufficient to support the convictions herein," provides little help.  Aplee. Br. at 15.  Compliance with this court's rules is required not only to ensure that one can be readily understood by opposing counsel and the court, but also to preserve precious judicial resources.  Counsel's nonchalance in this regard finds no welcome in this court.  We hope that this admonition serves upon counsel ready notice of the problem and the responsibility to correct it.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

04-7095, United States v. McGehee

**BRISCOE,** Circuit Judge, concurring:

I concur in the judgment, but write separately to focus on McGehee's involvement with co-defendant Jason Sloan when assessing the sufficiency of the evidence to support McGehee's conviction on Count 2 (attempted manufacture).

"Sufficiency of the evidence is a legal issue we review de novo." United States v. Green, 435 F.3d 1265, 1272 (10th Cir. 2006). In reviewing the sufficiency of the evidence, we "ask only whether taking the evidence . . . together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Id. (internal quotation marks omitted).

Count 2 of the indictment alleged that, "[b]eginning in about the summer of 2003 and continuing until on or about December 4, 2003, . . . McGEHEE and . . . SLOAN . . . knowingly and intentionally attempted . . . to manufacture 50 grams or more of methamphetamine" in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(vii). To convict McGehee on this count, the government was required to prove "two separate elements: (1) the defendant intended to manufacture methamphetamine; and (2) the defendant engaged in conduct constituting a substantial step toward the production of the drug." United States v. Beltz, 385 F.3d 1158, 1162 (8th Cir. 2004).

The evidence presented at trial was clearly sufficient to establish these two

elements. With respect to the first element, Daniel Cox testified that, during the several-month period he worked for McGehee, McGehee was constantly in the process of manufacturing methamphetamine and, over that period of time, cooked approximately twenty to thirty batches of methamphetamine. Cox also testified that McGehee was interested in learning from Jason Sloan how to use the anhydrous ammonia method to produce methamphetamine. Together, this evidence was sufficient to establish that McGehee intended to manufacture methamphetamine. As for the second element, it is clear, based on much of the evidence described above in the majority's discussion of the conspiracy conviction, that McGehee and Sloan had taken a substantial step towards producing methamphetamine at the time the search warrant was executed.