**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 13-3046

TERRY ALLEN THOMAS,

Defendant-Appellant.

**Appeal from the United States District Court**
**For the District of Kansas, Topeka, Kansas**
**(D.C. No. 5:12-CR-40044-JAR-2)**

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, on the brief), District of Kansas, Topeka, Kansas, for Plaintiff-Appellee.

Thomas D. Haney, Stevens & Brand, L.L.P., Topeka, Kansas, for Defendant-Appellant.

Before **HARTZ**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

**BACHARACH**, Circuit Judge.

Mr. Terry Thomas was charged in federal court with selling crack cocaine and maintaining a place to manufacture, distribute, or use a controlled substance. He went to trial 146 days after his arraignment. At the trial, an informant ("L.H.") testified that she had bought crack cocaine three times from Mr. Thomas. The jury apparently believed L.H. and found Mr. Thomas guilty on: (1) three counts of possession of crack cocaine with intent to distribute, and (2) two counts of using or maintaining a place for the manufacture or distribution of crack cocaine. With this finding, the court convicted Mr. Thomas and sentenced him to five concurrent prison terms of 130 months. In deciding on the sentence, the court attributed 26.91 grams of cocaine base to Mr. Thomas, assigned him a criminal-history score of 12, and enhanced the sentences for each drug offense based on the possession of a firearm.

In this appeal, we address nine issues:

- *Speedy Trial.* The first issue is whether the pretrial delay violated the Speedy Trial Act, 18 U.S.C. §§ 3161-3174 (2012). This statute would ordinarily require the court to begin the trial within 70 days of the filing of the indictment, and here the trial started 146 days later. But the Speedy Trial Act excludes time when pretrial motions were pending. With these exclusions, the delay was less than 70 days; thus, no statutory violation took place.

- *Admissibility of L.H.'s Testimony.* The second issue is whether the district court committed plain error by allowing L.H. to testify without corroboration. L.H. was impeached, but her testimony was relevant and no obvious grounds existed for exclusion; thus, the district court did not commit plain error in allowing L.H. to testify.

- *Admissibility of Drug Evidence.* The third issue is whether the district court erred in allowing introduction into evidence of cocaine base that L.H. said she had bought from Mr. Thomas. For introduction of the evidence, the government had to establish a chain of custody that rendered tampering improbable. Though L.H. was impeached, as stated above, the district court could reasonably determine that tampering was improbable for the cocaine base ultimately presented in court.

2

Thus, the district court acted within its discretion in admitting the cocaine base into evidence.

- *Jury Instructions.* The fourth issue is whether the district court erred in instructing the jury. The indictment alleged that Mr. Thomas had used *and* maintained a place to manufacture or distribute cocaine base. But the district court told the jury that Mr. Thomas could be convicted if he used *or* maintained a place to manufacture or distribute cocaine base. Mr. Thomas challenges the instructions based on their use of the word "or" and failure to define the word "used." Use of the word "or" was permissible even though the word "and" had been used in the indictment. And, the judge did not need to define "used," as it is an easily understood term. Thus, the court did not err in instructing the jury.

- *Sufficiency of the Evidence.* The fifth issue is whether the evidence would have been insufficient to support the guilty verdict if the disputed evidence had been excluded. Because we uphold the district court's evidentiary rulings, we conclude that Mr. Thomas's sufficiency argument rests on a false premise. The district court did not err in allowing L.H. to testify and overruling Mr. Thomas's objections to the drug exhibits. This evidence, combined with the other trial evidence, was sufficient for a finding of guilt.

- *Cumulative Error.* The sixth issue is whether two or more of the alleged errors require reversal of the conviction based on cumulative error. As discussed elsewhere, however, the district court did not commit two or more errors related to the conviction; thus, the court did not commit cumulative error.

- *Sentencing Based on Unproven Convictions.* The seventh issue is whether the district court erred in sentencing Mr. Thomas based on convictions that the government had failed to prove. On this issue, we agree with Mr. Thomas that the court erred. This error stems from the sentencing guidelines, which require consideration of criminal history. Reviewing this history, the probation officer relied on convictions in 2002, 2003, 2004, 2005, 2010, and 2012. Only one of these convictions was addressed in the government's evidence. Nonetheless, the district court applied a harsher guideline range based on six of the convictions. The government concedes error, and we agree that the district court erred by relying on convictions that had not been proven.

- *Sentencing Based on Conduct that Was Not Involved in the Conviction.* The eighth issue is whether the district court erred in sentencing Mr. Thomas based on drug quantities and a firearm that did not factor into the conviction. In sentencing, however, the district court can rely on conduct that did not result in a conviction. Thus, the sentencing was not tainted.

- *Minor Participant.* The ninth issue is whether the district court should have calculated a lower guideline range based on status as a minor participant. But, this issue was inadequately briefed. Thus, we decline to address the issue.

Based on these conclusions, we uphold the conviction, but reverse and remand for resentencing.

## I.    Speedy Trial

In part, Mr. Thomas challenges his conviction under the Speedy Trial Act. Appellant's Opening Br. at 21-23. This statute ordinarily requires a defendant's trial to begin within 70 days of the arraignment. 18 U.S.C. § 3161(c)(1) (2012). Though Mr. Thomas's trial started 146 days after his arraignment, the district court denied his motion to dismiss. In reviewing this decision, we engage in:

- de novo review regarding compliance with the Speedy Trial Act and

- review for abuse of discretion over denial of the motion to dismiss.

*United States v. Vogl*, 374 F.3d 976, 983-84 (10th Cir. 2004).

Without any exclusions, the 146-day period between Mr. Thomas's arraignment and the beginning of trial would violate the Speedy Trial Act. But the Act excludes certain blocks of time from the 70-day period, and four time periods are excludable here:[1]

- June 12, 2012, to June 21, 2012 (9 days);

- August 21, 2012, to October 30, 2012 (70 days);

- October 30, 2012, to November 1, 2012 (2 days); and

- November 1, 2012, to November 5, 2012 (4 days).

---

[1]    The government also contends that another day is excluded because of a one-day continuance given to a codefendant. We need not decide if that day is excludable because it would not materially affect the issue under the Speedy Trial Act.

Thus, the Speedy Trial Act excludes 85 of the 146 days between Mr. Thomas's arraignment and the beginning of his trial, leaving 61 days. Because the 61-day period did not exceed 70 days, the delay did not violate the Speedy Trial Act.

First, the 9-day period of June 12, 2012, to June 21, 2012, was excludable. During this period, the last of Mr. Thomas's codefendants had not yet been arraigned. Though Mr. Thomas had been arraigned on June 12, 2012, the Speedy Trial Act excludes reasonable periods of delay when defendants are joined for trial and does not start until the last defendant is arraigned. *See id.* § 3161(h)(6); *United States v. Young*, 45 F.3d 1405, 1410 n.5 (10th Cir. 1995). In Mr. Thomas's case, the last codefendant (Ms. Janaya Stewart) was arraigned on June 21, 2012, so the 70-day period began on June 21 rather than June 12.

Second, the statutory period does not include the 70 days from August 21, 2012, to October 30, 2012. This period is excluded under 18 U.S.C. § 3161(h)(6) (2012), which allows "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." When the delay is reasonable, "[a]n exclusion for delay 'attributable to one defendant is applicable to all co-defendants.'" *United States v. Vogl*, 374 F.3d 976, 983-84 (10th Cir. 2004)[2] (quoting *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 915 (10th Cir. 1993)).

---

[2] Mr. Thomas argues that *Vogl* misapplied the statute. *See* Appellant's Opening Br. at 22 ("The Court in *Vogl* read matters into the Speedy Trial Act which do not exist . . . ."). But we are bound by *Vogl*, as it constitutes precedent and we cannot overrule the decision of another panel. *See United States v. Morris*, 247 F.3d 1080, 1085 (10th Cir. 2001).

The 70-day delay was reasonable here. We require courts applying the reasonableness standard to examine "all relevant circumstances." *Id.* at 984. Three factors are pertinent: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to 'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'" *Id.* (quoting *United States v. Olivo*, 69 F.3d 1057, 1061-62 (10th Cir. 1995)).

The district court examined all relevant circumstances and correctly applied the three factors. I R. at 87. The first factor weighed against tolling the speedy trial clock because Mr. Thomas was not free on bond, but the other two factors supported tolling. *Id.* Mr. Thomas did not zealously pursue a speedy trial and trying the defendants separately would have required the government to prove the same facts in different trials. *Id.* We agree with the district court that the delay was reasonable and conclude that this 70-day period was excludable from Mr. Thomas's speedy trial calculation.

Third, the 2-day period from October 30, 2012, to November 1, 2012, is excludable under 18 U.S.C. § 3161(h)(1)(D) (2012). This provision excludes the period in which any pretrial motion is pending. 18 U.S.C. § 3161(h)(1)(D) (2012). The exclusion applies because Mr. Thomas filed a motion to dismiss that was pending on October 31 and November 1. I R. at 58-59, 85-90.

Fourth, the 4-day period from November 1, 2012, to November 5, 2012, is excluded under 18 U.S.C. § 3161(h)(1)(D) (2012). This section excludes the days in which a pretrial motion is pending. 18 U.S.C. § 3161(h)(1)(D) (2012). Under this

6

section, 4 days are excluded because Mr. Thomas filed a motion in limine and it remained pending on November 2, 3, 4, and 5. I R. at 868-69.

With exclusion of these four blocks of time, encompassing 85 days, the pretrial delay spanned only 61 days. Because this delay did not exceed 70 days, the district court did not abuse its discretion in denying Mr. Thomas's motion to dismiss.

## II.    Admissibility of L.H.'s Testimony

Before serving as an informant against Mr. Thomas, L.H. obtained felony convictions for forgery, theft, obstruction of justice, and drug possession. III R. at 14, 145-46. Following these convictions, police arrested L.H. on an unrelated charge and she agreed to cooperate by purchasing drugs from Mr. Thomas under the supervision of law enforcement. *Id.* at 14-16. L.H. made three purchases of crack, which involved quantities of 1.03 grams, 0.28 grams, and 0.18 grams.[3] *Id.* at 17-18, 22, 26, 31-32, 40, 47-51, 81, 134-35, 138-40; *see id.* at 199.

Mr. Thomas argues that the district court should have excluded L.H.'s testimony. Appellant's Opening Br. at 23-27. We would ordinarily review the trial court's decision to admit testimony for an abuse of discretion. *United States v. Poole*, 929 F.2d 1476, 1479 (10th Cir. 1991). But the government contends we should review for plain error and argues that Mr. Thomas did not adequately raise the issue below. Appellee's Br. at 16. Mr. Thomas disagrees. Appellant's Reply Br. at 1-2. We need not decide whether

---

[3]    Mr. Thomas argues that these purchases were not "controlled." Appellant's Opening Br. at 2, 27. But this argument does not affect the substance of our inquiry or the district court's. Admissibility turns on the rules of evidence, not whether police officers would consider the buy a "controlled" one.

to confine our review to the plain-error standard because we would uphold the evidentiary ruling even under the less deferential abuse-of-discretion standard. *United States v. Caldwell*, 585 F.3d 1347, 1355 (10th Cir. 2009).

The testimony was relevant and would generally be considered admissible. Fed. R. Evid. 401-02. But the district court had discretion to exclude L.H.'s testimony if its probative value had been "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

Mr. Thomas challenges L.H.'s testimony as uncorroborated. Appellant's Opening Br. at 23-27. But corroboration is not required for introduction of the evidence. *See United States v. Cox*, 934 F.2d 1114, 1120-21 (10th Cir. 1991) (uncorroborated testimony of a co-conspirator is sufficient for a finding of guilt). Thus, the district court did not abuse its discretion by allowing L.H. to testify even if her account had been uncorroborated.

## III.    Admissibility of Drug Evidence

According to Mr. Thomas, the drug evidence was inadmissible because the government failed to establish an adequate chain of custody. Appellant's Opening Br. at 27-29. He argues in his opening brief that the government did not establish a chain of custody to and from the laboratory (Kansas Bureau of Investigation). *Id.* at 28. In his reply brief, he argues that L.H. had stolen some of the cocaine base. Appellant's Reply Br. at 3.

We review the district court's admission of evidence for abuse of discretion. *United States v. Cardenas*, 864 F.2d 1528, 1530 (10th Cir. 1989). "A chain of custody

8

indirectly establishes the identity and integrity of the evidence by tracing its continuous whereabouts." *United States v. Gay*, 774 F.2d 368, 374 (10th Cir. 1985). When the evidence is not readily identifiable and is susceptible to tampering or contamination—which is the case with cocaine—the government must show a "'"chain of custody' of the item with sufficient completeness to render it improbable that the original item has been exchanged with another or been contaminated or tampered with.'" *Cardenas*, 864 F.2d at 1531 (quoting Edward Cleary, *McCormick on Evidence* § 212, at 668 (3d ed. 1984)). The trial court may admit the evidence if it "is substantially in the same condition as when the crime was committed." *Id.*

Admissibility does not require a perfect chain of custody. *United States v. Smith*, 534 F.3d 1211, 1225 (10th Cir. 2008). When the chain is imperfect, deficiencies bear on the weight of the evidence rather than its admissibility. *Id.*

The district court did not abuse its discretion by admitting the drug exhibits into evidence. Officer Kim Hanika testified that she had received the crack cocaine from L.H. immediately after each buy, packaged it, put on a label and badge number, and checked the item into the property room. III R. at 27-29, 33-35, 47-51. The officer added that she later took or caused the drugs to be taken to the Kansas Bureau of Investigation for analysis. *Id.* at 29, 35, 50. When the Bureau finished its analysis, the drugs were returned to Officer Hanika or her agent. *Id.* She then had the drugs taken to the property room. *Id.* at 35. From there, Officer Hanika brought the drugs to court. *Id.* at 50. These actions entail a nine-step chain of custody:

9



Of the nine steps in the chain, Mr. Thomas focuses on the first, second, fifth, sixth, and ninth steps. The first two steps involve L.H.'s role in obtaining the drugs and handing them to Officer Hanika. The fifth and sixth steps involve Officer Hanika's role in causing the drugs to be sent to and from the Kansas Bureau of Investigation. The ninth step involved taking the drugs to the courthouse.

The first two steps were adequately supported for purposes of admissibility. L.H. testified that she had obtained the drugs from Mr. Thomas and given them to Officer Hanika. *Id.* at 137-38. This testimony was corroborated by Officer Hanika. *Id.* at 26, 29, 34, 48-49. From this evidence, the district judge could reasonably conclude that L.H. probably had not tampered with the drugs that she turned over to Officer Hanika.

10

Mr. Thomas questions this conclusion based on L.H.'s admission that she had kept some of the cocaine base. We disagree. Though L.H. admitted that she had taken some of the drugs, those drugs were never given to Officer Hanika or introduced into evidence. As a result, the district judge could reasonably discount the possibility that L.H. had tampered with the drugs that were ultimately given to Officer Hanika.

In addition, Mr. Thomas challenges the sufficiency of the evidence at the fifth and sixth steps. These challenges are rejected.

Officer Hanika testified that she had taken the drugs from the Kansas Bureau of Investigation or had them taken there. *Id.* at 33. The officer added that when the testing was finished, she sent the drugs back to the property room. *Id.* Mr. Thomas argues that Officer Hanika did not provide an "explanation . . . for such transportation." Appellant's Opening Br. at 28. But Mr. Thomas has not suggested any possibility for tampering with the drug exhibits, for they remained identifiable based on Officer Hanika's labeling. *See United States v. Johnson*, 977 F.2d 1360, 1368 (10th Cir. 1992) (holding that a chain of custody was sufficient when an officer testified that he "either gave [the physical evidence] to an OSBI chemist or to another agent who relayed them to the chemist").

Finally, Mr. Thomas states, without any explanation or support, that the government did not present a chain of custody "from the lab [Kansas Bureau of Investigation] to court." Appellant's Opening Br. at 28. Officer Hanika testified that she had personally checked the drug exhibits out of the property room and brought them to the courtroom. III R. at 33. Mr. Thomas does not suggest any deficiencies in this evidence regarding the ninth step.

11

Mr. Thomas gives little reason to suspect tampering with the drugs that were ultimately given to Officer Hanika, tested, and introduced into evidence. Without more, we conclude that the district court did not abuse its discretion admitting the drugs into evidence. *See United States v. Washington*, 11 F.3d 1510, 1512, 1514 (10th Cir. 1993) (holding that the district court did not err in allowing introduction of drugs, which were obtained by a confidential informant, even though the informant had an opportunity to tamper with the drugs "because of the absence of or breaks in visual surveillance"); *United States v. Irving*, 665 F.3d 1184, 1194 (10th Cir. 2011) (holding that the chain of custody was sufficient even though investigators breached their protocol by failing to search the confidential informant and failing to employ continuous surveillance of the buy). At most, the perceived deficiencies in the chain of custody would affect the "weight of the evidence, not its admissibility." *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989).

## IV.     Jury Instructions

Mr. Thomas raises three objections to the jury instruction on the use or maintenance of a place to distribute cocaine base. Appellant's Opening Br. at 14-17.

First, the district court instructed the jury that it could convict Mr. Thomas if he had "used *or* maintained a place for the purpose of manufacturing or distributing a controlled substance." I R. at 126 (emphasis added). But the indictment charged that he had "use[d] *and* maintain[ed] places . . . for the purpose of manufacturing and distributing a controlled substance." *Id.* at 17 (emphasis added). Mr. Thomas contends

12

the instruction should have matched the indictment by using the conjunctive "and" rather than the disjunctive "or."  Appellant's Opening Br. at 29-38.

Second, Mr. Thomas implies that the district court should have defined the word "used."  *Id.* at 30-31.[4]

Third, he argues that the instructions would have allowed a conviction on the premises charge if he had sold drugs in *any* place.  *Id.* at 38.  This interpretation would stretch the criminal statute to an absurdity.

We review the jury instructions de novo and "view them in the context of the entire trial to determine if they 'accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case.'"  *United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008) (quoting *United States v. Crockett*, 435 F.3d 1305, 1314 (10th Cir. 2006)).  In doing so, we consider whether the district court abused its discretion in "shaping or phrasing . . . a particular jury instruction" and deciding to give or refuse a particular instruction.  *Id.*

Mr. Thomas's first argument fails.  The statute, like the challenged instruction, is phrased in the disjunctive.  *See* 21 U.S.C. § 856(a)(1) (2012) (it shall be unlawful to "use[] *or* maintain any place . . . for the purpose of manufacturing, distributing, or using any controlled substance").  When the statute is phrased in the disjunctive, we have held that:

---

[4]     Mr. Thomas does not expressly challenge the instruction based on the omission of a definition for "use."  *See* Appellant's Opening Br. at 30-31.  But Mr. Thomas implicitly raises the issue by criticizing the absence of a definition.  Thus, we construe his argument as seeking reversal based in part on the district court's failure to define the term "use."

- the government may phrase the indictment to allege that the defendant did both things and

- the district court can allow the government to prove that the defendant violated the law by performing either of the two prohibited acts.

*United States v. Gunther*, 546 F.2d 861, 868-69 (10th Cir. 1976); *see United States v. Powell*, 226 F.3d 1181, 1192 n.4 (10th Cir. 2000) (stating that an instruction was correct when it identified the elements in the disjunctive (or) even though the indictment was stated in the conjunctive (and)); *see also United States v. Pauldino*, 443 F.2d 1108, 1112 (10th Cir. 1971) ("It is settled that where a crime denounced disjunctively in the statute is charged in the conjunctive, proof of any one of the allegation [sic] will sustain a conviction.").

We addressed a similar issue in an unpublished opinion: *United States v. McGehee*, 177 F. App'x 815 (10th Cir. 2006). Like Mr. Thomas, Mr. McGehee was indicted under 21 U.S.C. § 856(a)(1). *See McGehee*, 177 F. App'x at 822. The indictment charged him with maintaining a place to manufacture, distribute, *and* use drugs. *See id.* (emphasis added). Though the indictment used the word "and," the jury instruction used the word "or." *See id.* We held that the instruction was correct, reasoning that the court properly instructs in the disjunctive even when the indictment is phrased in the conjunctive. *Id.*

Though *McGehee* is unpublished, we regard it as persuasive because it presents a classic application of settled precedents to § 856(a)(1), which is phrased in the

14

disjunctive. Under the reasoning employed in *McGehee*, we conclude that the jury instruction was proper.

We also reject Mr. Thomas's second argument because the district court did not err by omitting a definition for the word "used." Because the word is commonplace, the district court could reasonably conclude that a definition was unnecessary. *See United States v. Bryant*, 892 F.2d 1466, 1468 (10th Cir. 1989) (holding that the district court did not err by omitting a definition of the phrase "wanton and reckless disregard for human life" because this phrase was commonplace); *see also United States v. Robinson*, 435 F.3d 1244, 1249-50 (10th Cir. 2006) (holding that the district court did not err in the jury instructions by not defining "in furtherance of" when the statutory term comported with the phrase's ordinary meaning).

Third, we reject Mr. Thomas's argument that the instructions would have permitted a conviction on the premises charge if the jury found a drug sale in any place. *See* Appellant's Opening Br. at 38. This argument is untenable based on the instructions as a whole, for the judge elsewhere told the jury that it could find guilt on the premises charge only if drug activity was a "significant reason" for Mr. Thomas's maintenance of a place. I R. at 127. Accordingly, Mr. Thomas's third argument is invalid.

## V. Sufficiency of the Evidence

Mr. Thomas challenges the sufficiency of the evidence on both the distribution and premises counts. Appellant's Opening Br. at 38-40. In addressing this challenge, we view the evidence in the light most favorable to the government and review the record de novo to determine whether "any rational trier of fact could have found the defendant

15

guilty of the crime beyond a reasonable doubt." *United States v. Irvin*, 682 F.3d 1254, 1266 (10th Cir. 2012). In making this determination, we consider all the evidence that was introduced, even if the district court had erred in allowing use of the evidence. *See Davis v. Workman*, 695 F.3d 1060, 1078-79 (10th Cir. 2012) ("[W]hen considering a challenge to the sufficiency of the evidence, we consider all evidence admitted at trial, even if admitted improperly.").

On the distribution counts, Mr. Thomas's sufficiency challenge turns on his earlier challenges to the admissibility of L.H.'s testimony and the drug evidence. *See* Appellant's Opening Br. at 39-40 (incorporating arguments about admissibility of evidence in the challenge to sufficiency of the evidence on the distribution charges). Earlier, we held that L.H.'s testimony and the drug evidence were admissible. Based on this evidence, we also reject Mr. Thomas's challenge to the sufficiency of the evidence on the distribution charges. As we have held, "[i]t is the right of the jury to determine the credibility of each witness, and a jury may convict based on the uncorroborated testimony of a co-conspirator." *See United States v. Cox*, 934 F.2d 1114, 1120-21 (10th Cir. 1991) (internal citation omitted). Although Mr. Thomas presented numerous grounds to impeach L.H., the jury could determine whether she was credible. The jury decided she was, and we will not second-guess that decision.

Mr. Thomas also contends that the evidence was insufficient to convict on the premises charge because the apartments had been maintained by a codefendant. Appellant's Opening Br. at 38-40. This contention overlooks the ability of the court to convict if Mr. Thomas had used (rather than maintained) the apartments for an illicit

16

purpose. We have already held that the jury could have found Mr. Thomas guilty of violating 21 U.S.C. § 856(a)(1) if he had used the apartments to distribute drugs. Because Mr. Thomas does not challenge the ability of the court to convict on a "use" theory, the evidence sufficed on the premises charge.

## VI.    Cumulative Error

Mr. Thomas's cumulative-error challenge does not raise any new errors and relies on his earlier theories. Appellant's Opening Br. at 40-41. Because Mr. Thomas has not identified two or more errors on the conviction, we reject his cumulative-error challenge.

## VII.    Sentencing Based on Unproven Convictions

The district court adopted the findings in Mr. Thomas's presentence investigation report. II R. at 53. Consistent with the federal sentencing guidelines, the district court sentenced Mr. Thomas to concurrent 130-month sentences on each count based on a criminal history score of 12 (category V) and an offense level of 28. *Id.* at 21, 53; III R. at 323.

The author of the presentence investigation report (and the district court) calculated Mr. Thomas's criminal-history score as 12. II R. at 19-21. This score was based in part on 10 criminal-history points for convictions in 2002, 2003, 2004, 2005, 2010, and 2012. *Id.* at 19-20. Because Mr. Thomas was still under probation for his 2010 conviction, 2 points were added to his criminal-history score under the U.S. Sentencing Guidelines Manual § 4A1.1(d) (2012). *Id.* at 21. With this score, the offense level was calculated at 28 based in part on a 2-level firearm enhancement. *Id.* at 13-15.

17

Mr. Thomas challenges his criminal history score, arguing that the government failed to prove his prior convictions by a preponderance of evidence. Appellant's Opening Br. at 45-46. We agree and reverse and remand on this issue.

## A. Standard of Review

We review Mr. Thomas's sentence for procedural reasonableness under an abuse of discretion standard. *United States v. Gordon*, 710 F.3d 1124, 1160 (10th Cir. 2013). In considering procedural reasonableness, we engage in de novo review over the district court's legal conclusions and apply the clear-error standard to factual conclusions. *Id.* A sentence is procedurally unreasonable if the district court miscalculates the guideline range or "relies on clearly erroneous facts." *Id.* (internal quotation marks omitted).

## B. Mr. Thomas's Criminal History

In the presentence investigation report, the probation department calculated Mr. Thomas's criminal-history score based on convictions in 2002, 2003, 2004, 2005, 2010, and 2012. II R. at 19-20. Mr. Thomas demanded proof of the convictions. *Id.* at 34; III R. at 302-03. Thus, the government had to show the convictions by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 156 (1997) (per curiam).

In response, the government presented documentation of convictions in 1995, 1996, 2001, and 2002. Gov't Sentencing Ex. 1; *see* III R. at 304. Of these convictions, only the one in 2002 resulted in criminal-history points. *See* II R. at 17-19. But the documentation did not address the conviction in 2003, 2004, 2005, 2010, or 2012. Without these convictions, Mr. Thomas's criminal-history score would have been less

than 12. *See* II R. at 19; U.S. Sentencing Guidelines Manual, Sentencing Table, Ch. 5, Pt. A (2012).[5]

The government conceded the error in oral argument, but argued that it had provided Mr. Thomas with documents relating to his 2001, 2002, and 2003 convictions. Appellee's Br. at 54. The argument is immaterial because Mr. Thomas challenges the sufficiency of the evidence, not the notice.

Because the government did not prove the 2003, 2004, 2005, 2010, or 2012 convictions, they should not have been used to increase Mr. Thomas's criminal-history score. By relying on these convictions, the district court abused its discretion. Thus, we reverse and remand for resentencing.

With the remand, we must decide whether to give the government a second opportunity to present evidence of the prior convictions. "Although a remand for resentencing generally allows the district court to conduct de novo review, we exercise our discretion" and direct the district court to resentence Mr. Thomas based on the existing record. *United States v. Forsythe*, 437 F.3d 960, 963 (10th Cir. 2005).

We are guided by three considerations:

● The government bore the burden to prove the prior convictions;

---

[5] The district court added two points based on commission of the offense while under a sentence issued in 2010. *See* II R. at 20-21. Because the 2010 conviction was not proven, a further addition of two points may have been erroneous. But this issue has not been briefed.

19

- Mr. Thomas alerted the government to the deficiency in its proof;[6] and

- the government made no effort to cure the deficiency in its proof.

Appellant's App., vol. 3 at 309-12.

In *United States v. Forsythe,* these considerations led us to confine the district court on remand to the existing record. *Forsythe,* 437 F.3d at 963-64. There we reversed the sentence because the government had failed to prove that a prior burglary conviction involved a dwelling. *Id.* at 962-63. The government asked us to remand for de novo resentencing so that it could present new evidence regarding the burglary. *See id.* at 963. We declined this request, concluding that the government should not have a second opportunity to make the record that it failed to make earlier. *Id.* at 963-64. For this conclusion, we relied on the government's burden of proof, the defendant's effort to alert the government to the deficiency in its evidence, and the government's failure to cure the

---

[6]    The government presented an exhibit, stating that it "illustrate[s] the defendant's criminal history." Appellant's App., vol. 3 at 304. Defense counsel then argued:

> [Government's Exhibit 1] provides further confusion because those offenses that are listed there are not the ones in the presentence report that count. The 10 points don't come from these offenses. One of them -- two of them are timed out. Three of them. An '01 conviction, a '94 conviction, a '96 conviction. They're timed out to begin with. And the last two that are mentioned, '99 and 2000, they're not in the presentence report. So there isn't any correlation between what's in the presentence report and the defendant's criminal history in proving the defendant committed any of those offenses.

*Id.* at 309-10.

deficiency. *Id.*; *see also United States v. Campbell*, 372 F.3d 1179, 1183 (10th Cir. 2004) (reversing and remanding for resentencing based on the existing record).

The same factors apply here, and we too decline to give the government a second opportunity to make the record that it failed to make the first time. Thus, on remand, the district court must recalculate the criminal-history score based on the existing record.

## VIII. Sentencing Based on Conduct Not Involved in the Conviction

Mr. Thomas raises three challenges to his sentencing based on conduct that was not involved in his convictions. Appellant's Opening Br. at 41-45. He contends that: (1) the district court should have attributed only 1.49 grams of cocaine base to him (the total amount of cocaine base underlying the 3 sales involved in the present conviction); (2) the government failed to support the 2-level firearm enhancement; and (3) he was entitled to a 2-level deduction as a "minor participant." *Id.* We reject these challenges.

### A. Drug Quantity Evidence

The district court attributed 26.91 grams of crack cocaine to Mr. Thomas from three sources: (1) 22.18 grams found in an apartment; (2) 0.18 grams located in a nearby baggie; and (3) 4.55 grams charged in the indictment. II R. at 13. Mr. Thomas challenges the district court's attribution of all but the 1.49 grams underlying his conviction. Appellant's Opening Br. at 41-43. We review this contention for clear error. *See United States v. Caldwell*, 589 F.3d 1323, 1333 (10th Cir. 2009).

Mr. Thomas argues that he was convicted of distributing only 1.49 grams of cocaine base and could not have been sentenced based on additional quantities because: (1) he was not charged with conspiracy or aiding and abetting and the jury made no such

findings, and (2) the district court impermissibly relied on Government Sentencing Exhibit 2 and unreliable hearsay. Appellant's Opening Br. at 41-43. We reject both arguments.

First, the district court could sentence Mr. Thomas based on uncharged conduct. Under the federal sentencing guidelines, Mr. Thomas bears responsibility for: (1) "all acts and omissions [he] committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused," and (2) "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity." U.S. Sentencing Guidelines Manual §§ 1B1.3(a)(1)(A), 1B1.3(a)(1)(B) (2012). For use in sentencing, the government need not charge the conduct or present it to a jury. *See United States v. Rodriguez-Felix*, 450 F.3d 1117, 1131 (10th Cir. 2006).

Second, the district court did not impermissibly rely on Government Sentencing Exhibit 2 or unreliable hearsay. Instead, the district court relied on trial evidence to attribute 26.91 grams of cocaine base to Mr. Thomas. *See* III R. at 316-17. Based on that evidence, the district court found that:

- Mr. Thomas "was a lieutenant" in the overall drug operation,

- "he and Mr. Hayes were acting in concert in using a lot of [the] same people to sell from residences around Topeka," and

- the additional sales were "reasonably foreseeable to [Mr. Thomas] in view of his joint operation with Mr. Hayes and others."

*Id.* at 317-18. Because the district court could include the quantities established by the trial evidence, we uphold the district court's attribution of 26.91 grams to Mr. Thomas.

22

**B.     The Firearm Enhancement**

The federal sentencing guidelines require the district court to apply a two-level sentencing enhancement if the defendant possessed a firearm in connection with a drug offense. U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2012). The district court applied this enhancement because police had found a gun under a couch and drugs in the apartment when they arrested Mr. Thomas. III R. at 314; *see id.* at 307. Mr. Thomas contends that the government has not shown that a firearm was connected to the offense. Appellant's Opening Br. at 43-45.

"The government bears the burden of proving possession [of a firearm] by a preponderance of the evidence." *United States v. Roberts*, 980 F.2d 645, 647 (10th Cir. 1992). Initially, the government need only show that the firearm was found in "physical proximity to the offense." *Id.* If the government meets its initial burden, the defendant must show that it was "clearly improbable" that the weapon was connected to the offense. *United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001).

The government met its initial burden. A gun was found in a residence with drugs, scales, plastic bags, and other drug paraphernalia. Gov't Ex. 2 at 155; II R. at 13; III R. at 92, 313. The proximity of the gun and drug evidence sufficed for the government's threshold burden. *See United States v. Roederer*, 11 F.3d 973, 982-83 (10th Cir. 1993). Because Mr. Thomas has not shown a "clear improbability" that the weapon was connected to the offense, we uphold the firearm enhancement.

23

## IX. Minor Participant

Mr. Thomas asserts, without any elaboration or citation, that he was entitled to a minor-participant reduction. Appellant's Opening Br. at 45. Because this assertion is not adequately explained, we decline to consider it. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

## X. Conclusion

We affirm the conviction. But we reverse and remand for resentencing based on the existing record.