FILED
United States Court of Appeals
Tenth Circuit

November 25, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

MARCO A. HENDRICKSON,

     Defendant - Appellant.

No. 12-5016
(D.C. Nos. 4:08-CR-00197-JHP-2 and
4:10-CV-00273-JHP-PJC)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **HOLMES**, and **BACHARACH**, Circuit Judges.

Defendant-Appellant Marco A. Hendrickson appeals from the district court's denial of his 28 U.S.C. § 2255 motion. We granted him a certificate of appealability ("COA") to consider whether his counsel provided ineffective assistance by failing to object to the applicability of a ten-year statutory minimum sentence for aiding and abetting his codefendant's discharge of a firearm during a crime of violence under 18 U.S.C. § 924(c)(1)(A)(iii). Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a), we **affirm**.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

# I

Mr. Hendrickson and Calvin Patillar robbed a Tulsa restaurant in 2008.
When they entered the restaurant, Mr. Patillar, armed with two firearms, fired two
to three rounds into the ceiling and ordered everyone to get on the floor. Mr.
Hendrickson then went behind the bar and took cash from the cash registers.
Fleeing cash-in-hand, the two climbed into a get-away vehicle driven by
Kimberly Roberts and sped away with the police in pursuit. In the ensuing high-
speed car chase, Mr. Hendrickson "bailed out" of the car and ran. Supp. R., Vol.
II, ¶ 7, at 5 (Presentence Investigation Report, revised Apr. 29, 2009) [hereinafter
"PSR"]. He was soon discovered hiding under an overturned swimming pool and
arrested. The cash and the two firearms were found nearby.

Mr. Hendrickson and his two codefendants—Mr. Patillar and Ms.
Roberts—were charged in a three-count indictment. Count One charged all three
with Hobbs Act robbery under 18 U.S.C. § 1951 and with aiding and abetting
under 18 U.S.C. § 2. Count Two alleged that Mr. Patillar "knowingly discharged
and possessed a firearm in furtherance of a crime of violence" in violation of 18
U.S.C. § 924(c). R., Vol. I, at 15 (Indictment, filed Dec. 3, 2008). Finally, Count
Three charged Mr. Hendrickson with having "knowingly possessed a firearm in
furtherance of a crime of violence" in violation of 18 U.S.C. § 924(c). *Id.* at 16.[1]

---

[1] The government subsequently filed a two-count superseding
(continued...)

Mr. Hendrickson eventually pleaded guilty without a plea agreement to Counts One and Three of the indictment. At the change-of-plea hearing, he described the robbery and admitted various facts necessary to establish the elements of the charged offenses, including that he knew Mr. Patillar had the two firearms when they entered the restaurant, that they entered intending to rob the business, and that he was in possession of "the same gun that was involved in th[e] robbery" at the time of his arrest. Supp. R., Vol. IV, at 22 (Tr. Plea Hr'g, dated Feb. 3, 2009). Mr. Hendrickson's counsel indicated that they had "discussed the concept[s] of constructive possession and vicarious liability" and that Mr. Hendrickson understood them fully. *Id.* at 24.

The Presentence Investigation Report ("PSR") subsequently prepared by the United States Probation Office recommended a mandatory minimum sentence of ten years (i.e., 120 months) for Count Three, pursuant to 18 U.S.C. § 924(c)(1)(A)(iii), because Mr. Hendrickson's coconspirator had fired shots during the robbery.[2] The PSR also calculated Mr. Hendrickson's Count One

---

[1](...continued)
information against Mr. Hendrickson alleging, *inter alia*, that he "knowingly *discharged* and possessed a firearm in furtherance of a crime of violence" in violation of § 924(c). Supp. R., Vol. I, at 14 (Superseding Information, filed Dec. 31, 2008) (emphasis added). However, because Mr. Hendrickson declined to waive indictment, the government dismissed the superseding information.

[2]     18 U.S.C. § 924(c)(1)(A) provides, in relevant part:

[A]ny person who, during and in relation to any crime of
(continued...)

range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to be 151 to 188 months.  This rendered a total advisory Guidelines sentencing range of 271 to 308 months.  Mr. Hendrickson did not object to the PSR.[3]

On April 29, 2009, the district court sentenced Mr. Hendrickson to 271 months' imprisonment, consisting of consecutive terms of 151 months for Count One and 120 months for Count Three.  Mr. Hendrickson did not raise any objections at the sentencing hearing.  On October 2, 2009, Mr. Hendrickson sent a letter to the district court, claiming that he had intended to appeal from his sentence, but that his counsel had failed to file an appeal on his behalf.  The district court treated the letter as a motion to file an appeal out of time.  It denied the motion, and we subsequently dismissed Mr. Hendrickson's appeal from this

---

[2](...continued)
> violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
> (i)  be sentenced to a term of imprisonment of not less than 5 years;
> (ii)  if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
> (iii)  if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

[3]  At an evidentiary hearing on Mr. Hendrickson's 28 U.S.C. § 2255 motion, his counsel explained that the initial PSR erroneously calculated a lower minimum and a higher maximum Guidelines range.  Mr. Hendrickson did not object "because, by objecting, [he] would be increasing the minimum of the range."  R., Vol. II, at 77 (Tr. Mot. Hr'g, dated Dec. 19, 2011).

denial.

Mr. Hendrickson, acting pro se, then filed the instant motion pursuant to 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel because his counsel failed to file an appeal, and also because his counsel did not challenge the career-offender enhancement or the ten-year mandatory minimum sentence. The district court denied his petition as to all three ineffective-assistance-of-counsel claims. We granted Mr. Hendrickson a COA to appeal his third ineffective-assistance claim—*viz.*, his claim that counsel was constitutionally ineffective in failing to object to the district court's imposition of a ten-year mandatory minimum sentence under 18 U.S.C. § 924(c)(1)(A)(iii)—and appointed him counsel to pursue this appeal.

## II

### A

Mr. Hendrickson argued before the district court that his counsel should have objected to the ten-year mandatory minimum sentence because the "district court impermissibly exceeded the scope of the indictment" at sentencing. R., Vol. I, at 172 (Def.'s Reply to Gov't's Resp. in Opp'n to Def.'s Am. § 2255 Mot., filed Feb. 14, 2011). Specifically, Mr. Hendrickson alleged that "[b]y charging [him] with only possessing and charging his co-defendant with possessing and discharging, the grand jury narrowed the indictment" such that he had no "notice that he could be held responsible for the discharge of a firearm." *Id.* at 171. The

5

district court rejected this claim, reasoning that "[a]lthough [Mr. Hendrickson] did not discharge the firearm, the mandatory minimum is proper based on his co-conspirator's discharge of a firearm in furtherance of a crime of violence." *Id.* at 228 (Op. & Order, filed Jan. 30, 2012). Thus, reasoned the court, because an objection to the ten-year mandatory minimum sentence would not have been sustained, the failure of Mr. Hendrickson's counsel to object was not ineffective assistance of counsel.

## B

### 1

"We review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006). Because an ineffective-assistance-of-counsel claim is a mixed question of law and fact, our review is de novo. *See United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011). To establish ineffective assistance of counsel, Mr. Hendrickson bears the burden of demonstrating that "(1) defense counsel's performance was deficient, *i.e.*, counsel's 'representation fell below an objective standard of reasonableness' as measured by 'prevailing professional norms,' and (2) defendant was prejudiced thereby, *i.e.*, 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). "We need not analyze both the performance and

6

prejudice prongs of the *Strickland* test if [the] defendant 'fails to make a sufficient showing of one.'" *United States v. Hollis*, 552 F.3d 1191, 1194 (10th Cir. 2009) (quoting *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005)).

Accordingly, we resolve Mr. Hendrickson's claim at the first prong: because an objection to the ten-year mandatory minimum sentence received under § 924(c)(1)(A)(iii) would not have been sustained, we conclude that his counsel's performance was not deficient.

## 2

In assessing an attorney's performance, we "reconstruct the circumstances of counsel's challenged conduct, and . . . evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. This principle is particularly relevant where, as here, there has been an intervening change in the law between Mr. Hendrickson's sentencing and this appeal. At the time of sentencing (and at the time of briefing), the Supreme Court had held that, "as a matter of statutory interpretation, § 924(c)(1)(A) defines a single offense. The statute regards brandishing and discharging as sentencing factors to be found by the judge, not offense elements to be found by the jury." *Harris v. United States*, 536 U.S. 545, 556 (2002), *overruled by Alleyne v. United States*, --- U.S. ----, 133 S. Ct. 2151 (2013). Recently, however, the Supreme Court overruled *Harris*, holding that "any fact that increases the mandatory minimum"—including the factors listed in § 924(c)(1)(A)—"is an 'element' that must be submitted to the

7

jury." *Alleyne*, 133 S. Ct. at 2155.[4]

Nevertheless, because "from counsel's perspective at the time," *Harris* governed, *Strickland*, 466 U.S. at 689, we must assess his performance under the pre-*Alleyne* § 924(c) framework—*viz.*, we must treat the discharge of the firearm as a sentencing factor rather than as an element of the offense, *see Spears v. Mullin*, 343 F.3d 1215, 1250 (10th Cir. 2003) ("[C]ounsel is not ineffective for failing to anticipate arguments or appellate issues that only blossomed after defendant's trial . . . ." (omission in original) (quoting *Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir. 1999)) (internal quotation marks omitted)); *see also Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require counsel to forecast changes or advances in the law . . . ."). With this caveat in mind, we turn to Mr. Hendrickson's ineffective-assistance-of-counsel claim.

## C

Mr. Hendrickson's claim is predicated on his counsel's failure to object that the indictment provided insufficient notice that he could be sentenced for his codefendant's discharge of a firearm. In order to determine whether this

---

[4]     More specifically, the Supreme Court held that the district court erred in subjecting the defendant to a seven-year mandatory minimum sentence under § 924(c)(1)(A)(ii) for "brandishing" a firearm when "the finding of brandishing" was made by the district court under a preponderance-of-the-evidence standard and not by a jury beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2163.

8

constituted deficient performance, "we look to the merits of the omitted issue. If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999) (citation omitted) (internal quotation marks omitted); *see also Neill v. Gibson*, 278 F.3d 1044, 1058 (10th Cir. 2001) (holding that counsel's failure to object to a prosecutor's allegedly improper statements was not constitutionally deficient because the prosecutor's conduct was not inappropriate).

Mr. Hendrickson relies primarily on the Sixth Circuit's decision in *United States v. Thompson*, 515 F.3d 556 (2008), *abrogated by Alleyne*, 133 S. Ct. at 2155, to demonstrate that the district court would have sustained an objection to the ten-year mandatory minimum sentence. As a preliminary matter, we underscore the obvious: *Thompson* is not a product of our court; therefore, it would not have been a controlling fixture of the legal landscape surveyed by Mr. Hendrickson's counsel and the district court at the time of sentencing, and it has no binding force in our assessment of the merits of Mr. Hendrickson's ineffective-assistance claim. Nonetheless, upon assessing *Thompson*, we determine that its reasoning is not persuasive. And, ultimately, we conclude that Mr. Hendrickson was not entitled under well-established law to the kind of notice that he effectively argues for here—that is, explicit notice in the indictment that he could be held responsible as an aider and abettor at *sentencing* for his

9

codefendant's (i.e., Mr. Patillar's) discharge of the firearm.  Thus, an objection to Mr. Hendrickson's sentence on notice grounds based on the omission of this information would have been properly overruled; consequently, Mr. Hendrickson was *not* provided ineffective assistance.

**1**

The facts in *Thompson* are admittedly similar to those before us.  In that case, Mr. Thompson and his codefendant, Mr. Jones, were both charged in separate counts of an indictment with violating § 924(c).  *See Thompson*, 515 F.3d at 565–66.  Count Three charged Mr. Jones with having "knowingly used, carried, and *discharged* a firearm, to-wit: a Glock, . . . during and in relation to a drug trafficking crime," while Count Four alleged that Mr. Thompson "knowingly used and carried a firearm, to-wit: a Ruger, . . . during and in relation to a drug trafficking crime."  *Id*. (emphasis added).  Although the Ruger Mr. Thompson carried was not discharged during the course of the crime, "the district court sentenced Thompson to the 10-year mandatory minimum under § 924(c)(1)(A)(iii) based on evidence that *Jones* had discharged the Glock."  *Id*. at 566 (emphasis added).

The Sixth Circuit reversed Mr. Thompson's conviction.  While the court "recognize[d] that, as a general matter, Thompson may indeed be held liable for Jones' conduct," it characterized the issue presented as "whether, *under the specific language of § 924(c) and the indictment*, the district court appropriately

10

sentenced Thompson to the 10-year mandatory minimum." *Id.* (emphasis added).

The Sixth Circuit found "two fundamental problems with the district court's

sentence." *Id.* First, as stated in the indictment, "the grand jury charged

Thompson with using and carrying 'a Ruger' in connection with drug trafficking,

and aiding and abetting the same under 18 U.S.C. § 2," while charging Jones with

using, carrying, and discharging a Glock. *Id.* The court reasoned that "[u]nder a

plain reading of the indictment, the Ruger, being 'a firearm' for purposes of

§ 924(c)(1)(A), would be the 'the firearm' for purposes of Thompson's sentence."

*Id.*

The second problem the court identified was that "the indictment charged

Thompson . . . with respect to specific criminal activity—'us[ing] and carr[ying]'

a firearm." *Id.* (alterations in original). In contrast, the indictment "charged his

co-defendant with 'us[ing], carr[ying], *and* discharg[ing]' a firearm." *Id.*

(alterations in original) (emphasis added). Thus, the Sixth Circuit concluded, "the

indictment not only failed to provide Thompson notice that the Glock could serve

as 'the firearm' for purposes of the § 924(c)(1)(A) enhancements, it also failed to

put him on notice that he could be held responsible for the discharge of a

firearm." *Id.*

The court noted that these issues could have been avoided if "the grand jury

expressly incorporated Count 3 into Count 4" or if the indictment had "dispensed

with listing any of the sentencing factors of 18 U.S.C. § 924(c)(1)(A)(i)–(iii)" and

11

"omitted any references to the particular make and model of firearm or the term 'discharge' in Count 3." *Id.* at 567. Instead of pursuing either of these alternatives, "by charging Jones specifically with using, carrying and discharging a Glock and charging Thompson only with using and carrying a Ruger," the court concluded that "the grand jury narrowed the indictment vis-à-vis Thompson in a material way" and thus failed to "give Thompson fair notice that he could be held responsible for discharge of the Glock." *Id.*

The government argues that *Thompson* is distinguishable because the Sixth Circuit's decision turned on the fact that the indictment charged Mr. Jones and Mr. Thompson based on two different guns—an issue not presented in Mr. Hendrickson's case.[5] This argument, however, is not entirely persuasive and does not provide a means to fully distinguish *Thompson*. The specification of two different firearms was only *one* of the "two fundamental problems" the court identified. *Thompson*, 515 F.3d at 566. The other was the difference in the charging language in each of the counts—the indictment charged Mr. Jones with using, carrying, and discharging a firearm, while only charging Mr. Thompson with using and carrying a firearm. *See id.* at 566 n.2 ("[T]he indictment here not only charged Thompson and his co-defendant in relation to different firearms, *but,*

---

[5]     Neither count of the indictment at issue here specified a firearm, and indeed, Mr. Hendrickson admitted to possession of the same gun that was discharged in the course of the robbery.

*importantly, different criminal activity*." (emphasis added)).  The indictment in

this case presents the same distinction: Count Two alleged that Mr. Patillar

"discharged and possessed a firearm," R., Vol. I, at 15, but Count Three charged

Mr. Hendrickson with only having "possessed a firearm," *id.* at 16.

**2**

Because the facts here are parallel in the relevant respect to those

in *Thompson*, we must determine whether to follow the Sixth Circuit's lead in

finding that, pre-*Alleyne*, charging one defendant with possessing a firearm and a

second defendant with discharging a firearm would "fail[] to put [the former] on

notice that he could be held responsible for the discharge of a firearm."

*Thompson*, 515 F.3d at 566.

The government urges us not to follow the Sixth Circuit, claiming that

*Thompson* was wrongly decided—and consequently that the indictment

sufficiently put Mr. Hendrickson on notice.  And we agree.  As explicated below,

we reason that, although the Sixth Amendment does entitle a defendant, like Mr.

Hendrickson, to notice in an indictment of the *elements* of the crime with which

he is charged, it does not guarantee him the right to notice of facts or theories of

liability that merely support sentencing enhancements.  Discharging a firearm was

precisely such a sentence-enhancing fact pre-*Alleyne*, and aider-and-abettor

principles constitute just such a liability theory.  Therefore, Mr. Hendrickson was

not constitutionally entitled to notice that his sentence could be enhanced based

13

upon his aiding and abetting his codefendant, Mr. Patillar, in the discharge of a firearm.

It is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence. *See Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) ("An indictment must set forth each element of the crime that it charges. But it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." (citation omitted)). Prior to *Alleyne*, controlling precedent from the Supreme Court and our court held that "discharging" a firearm under § 924(c)(1)(A)(iii) was a sentencing factor, and not an element of the offense, and thus it did not need to be included in an indictment. *See Harris*, 536 U.S. at 556 (holding that "discharging [i]s [a] sentencing factor[] to be found by the judge, not [an] offense element[]"); *id.* at 568 (concluding that discharging "need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt"); *United States v. Rosemond*, 695 F.3d 1151, 1153 (10th Cir. 2012) ("[B]randishing and discharging a firearm are sentencing enhancements that the Government must prove to the sentencing court by a preponderance of the evidence."), *vacated and remanded on other grounds*, --- U.S. ----, 134 S. Ct. 1240 (2014).

Importantly, we also have held that a defendant can be held liable as an aider and abettor *at sentencing* for his codefendant's use of a firearm. *See United*

14

*States v. Bowen*, 527 F.3d 1065, 1075 (10th Cir. 2008) (holding that a defendant was eligible, as an aider and abettor, "for a sentencing enhancement predicated on [his co-defendant's] 'brandishing' of [a] weapon"). Aiding and abetting need not be charged in an indictment in order to be utilized later in the proceedings (including during sentencing) because it "is not an independent crime under 18 U.S.C. § 2; it simply abolishes the common-law distinction between principal and accessory." *United States v. Cooper*, 375 F.3d 1041, 1049 (10th Cir. 2004) (quoting *United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir. 1997)) (internal quotation marks omitted) (holding that a defendant may be convicted as an aider and abettor even if this theory is not charged in the indictment); *see United States v. Thomas*, 749 F.3d 1302, 1316–17 (10th Cir. 2014) (concluding that a district court could sentence the defendant based on a greater quantity of drugs than that for which he personally was convicted even though he "was not charged with conspiracy or aiding and abetting" the overall drug operation). Indeed, U.S.S.G. § 1B1.3(a)(1)(A) explicitly requires the sentencing court to consider, in calculating a defendant's base offense level and other adjustments, "all acts and omissions committed, aided, [and] abetted . . . by the defendant."

In short, while the Sixth Amendment "guarantees [Mr. Hendrickson] notice of the charges against him," *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1182 (10th Cir. 2009) (quoting *United States v. Van Tieu*, 279 F.3d 917, 921 (10th Cir. 2002)) (internal quotation marks omitted), this notice requirement does not

15

mandate that facts or theories of liability that support sentencing enhancements—including, respectively, discharging a weapon or aiding and abetting—be stated in the indictment. As such, at the time of Mr. Hendrickson's sentencing, the district court would have acted properly in concluding that the government's failure to charge Mr. Hendrickson with discharging a firearm, or with aiding and abetting his codefendant's discharge of a firearm, did not preclude the court from enhancing Mr. Hendrickson's sentence—by imposing upon him a ten-year mandatory minimum under § 924(c)(1)(A)(iii)—based on his *codefendant's* discharge of a firearm.

**3**

Although the *Thompson* court seemed to give obligatory recognition to the well-established distinction between elements of an offense and sentencing factors, the substance of its holding is not consonant with the foregoing understanding of the actual notice constraints that the Sixth Amendment imposes; therefore, *Thompson* is unpersuasive. The authorities that *Thompson* relied upon—*United States v. Leichtnam*, 948 F.2d 370, 379–81 (7th Cir. 1991), and our opinion in *United States v. Bishop*, 469 F.3d 896, 901–04 (10th Cir. 2006), *overruled in part on other grounds by Gall v. United States*, 552 U.S. 38 (2007)—further highlight the dubious nature of its conclusion.

In both of these cases, the court held that an indictment was constructively amended because the indictment charged the defendant with possessing a *specific*

16

firearm, while the evidence at trial and the jury instructions permitted conviction for possession of different firearms. *See Bishop*, 469 F.3d at 901–04; *Leichtnam*, 948 F.2d at 379–81. However, constructive-amendment claims focus on whether the defendant was *convicted* of a crime that the indictment did not charge, and, because the government charged a specific firearm in the indictment, it was obliged to establish that fact in order to convict the defendant. *See Bishop*, 469 F.3d at 902 ("If an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars."); *see also United States v. Rahseparian*, 231 F.3d 1257, 1265 (10th Cir. 2000) ("[B]ecause the indictment in this case specifically charged that the unlawful activity underlying the money laundering count was mail fraud, the government was obligated to prove not only that [the defendant] knew the money was obtained illegally, but that it was obtained by mail fraud."). Yet, these claims are not concerned with whether a defendant can be held accountable at *sentencing* for conduct not included in an indictment count—the matter apposite here. In fact, defendants are regularly held accountable at sentencing for conduct not charged by the indictment. *See Thomas*, 749 F.3d at 1316 ("[T]he district court could sentence Mr. Thomas based on uncharged conduct."); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1131 (10th Cir. 2006) ("In the aftermath of *Booker*, we have routinely permitted a district court to enhance a defendant's sentence using uncharged conduct proven to the court by a preponderance of the evidence.").

17

As such, constructive-amendment cases appear to have little relevance to the issue in *Thompson* and, more importantly, to this appeal. Mr. Hendrickson "pleaded guilty to the § 924(c) charge and, consequently, whether he was convicted of an offense other than that charged in the indictment is not at issue." *Thompson*, 515 F.3d at 566 n.2.[6] We therefore conclude that *Thompson* does not chart a course that we should follow.

**4**

To recap, at the time of Mr. Hendrickson's sentencing, controlling precedent did not require that either the discharge of a weapon or aiding and abetting be explicitly alleged in an indictment count in order to impose sentencing enhancements based on such factors. Therefore, we conclude that Mr. Hendrickson was provided constitutionally sufficient notice of the conduct for which he could be held liable. Had Mr. Hendrickson's counsel objected to his ten-year mandatory minimum sentence on the grounds that it "exceeded the scope of the indictment," *Thompson*, 515 F.3d at 567, the objection would have been overruled. His counsel thus did not render ineffective assistance by failing to raise an objection that was destined to fail.

---

[6] For this reason, Mr. Hendrickson's argument that "[t]he district court impermissibly constructively amended the indictment . . . when sentencing him to a ten-year minimum term," Aplt. Opening Br. at 30, is misplaced.

## III

We accordingly **AFFIRM** the district court's order denying Mr. Hendrickson's § 2255 motion.


Entered for the Court



JEROME A. HOLMES
Circuit Judge